Argued and submitted November 18, 1987, affirmed October 19, 1988

## ST. PAUL FIRE AND MARINE INSURANCE COMPANY,
*Respondent,*

*v.*

## VALLEY INSURANCE COMPANY,
*Appellant.*

(TC 86-0169; CA A42700)

762 P2d 1048

Appeal from Circuit Court, Linn County.

Wendell H. Tompkins, Judge.

Thomas D. Adams, Portland, argued the cause for appellant. With him on the briefs were I. Franklin Hunsaker, Jeremy E. Zuck, and Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland.

Patrick J. Kouba, Eugene, argued the cause for respondent. On the brief were Darst B. Atherly and Atherly, Butler & Burgott, Eugene.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant appeals a judgment of $26,350.76 for plaintiff in its action for contribution from defendant. That sum is one-half of the amount that plaintiff paid to its insured, Smith, for fire damage to her home. Defendant assigns as errors that the court denied its motion for summary judgment[1] and entered judgment for plaintiff after trial. We affirm.

Defendant argues that the court erred because, before the loss, Smith had cancelled her policy with defendant, either orally or by "substitution." The court, without a jury, made a "general finding * * * in favor of the plaintiff and against the defendant" and granted plaintiff the relief requested. That finding is equivalent to a jury verdict and cannot be set aside if it is supported by substantial evidence. *Montgomery v. Wadsworth Plumbing*, 278 Or 455, 459, 564 P2d 703 (1977). We assume that the court found facts consistent with its judgment in plaintiff's favor. *Harpole v. Paeschke Farms, Inc.*, 267 Or 592, 598, 518 P2d 1023 (1974).

From the evidence, the court could have found that defendant insured Smith's home under a policy that was to expire on October 30, 1985. The policy provided that the insured "may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect." On October 11, 1985, Smith met with plaintiff's agent, Nixon, and paid an initial premium for a policy with plaintiff of home owner's insurance, including coverage for fire loss. Nixon then told Smith that she had become insured with plaintiff and that she should cancel her policy with defendant immediately. That day, Smith called the agency through whom she had purchased her policy with defendant. She told Warner, the employe who answered the telephone, that she wanted to cancel her policy. She also answered Warner's questions regarding her new policy. Warner told Smith that she would send her a release form in the mail and asked her to sign and return it. On October 14, 1985, fire damaged Smith's home.

---

[1] Because this case was tried on the merits, we will not review the court's denial of defendant's motion for summary judgment. *Menke v. Bruce*, 88 Or App 107, 109, 744 P2d 291 (1987); *Mt. Fir. Lumber Co. v. Temple Dist. Co.*, 70 Or App 192, 198, 688 P2d 1378 (1984); *compare Payless Drug Stores v. Brown*, 300 Or 243, 708 P2d 1143 (1985).

After the fire, Smith received from defendant a form entitled "Cancellation Request/Policy Release." Accompanying instructions directed Smith to "sign by the red 'x' and return to [defendant's] office." The form included a statement that "[n]o claims * * * will be made * * * under this policy for losses which occur after the date of cancellation shown above." The date of cancellation shown was "10-11-85." Smith did not sign or return the form.

Defendant claims that ORS 743.069(2) and ORS 743.636 require that we read its policy provision covering cancellation to permit an insured to cancel by oral request. ORS 743.069(2) provides that an insurance policy which is not in compliance with the Insurance Code is not invalid "but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy been in full compliance with the Insurance Code." ORS 743.636 provides that a "fire insurance policy shall contain a provision as follows: 'this policy shall be canceled at any time at the request of the insured.' " Defendant argues that these provisions, read together, require it to cancel a policy on the insured's oral request for cancellation. *See Hansen v. Western Home Ins. Co.*, 89 Or App 68, 747 P2d 1007 (1987), *rev den* 305 Or 576 (1988). It asserts here that it is undisputed that Smith orally cancelled her insurance contract with defendant on October 11, 1985.

Even if we deem that defendant's policy contains a provision for oral cancellation by request, the court could have found that Smith did not orally cancel her policy with defendant on October 11, 1985. The court could have found that Smith's purpose in calling defendant that day was to request that defendant cancel her policy and that she wanted the cancellation to be effective as of October 11, 1985. From the evidence, however, the court could also have found that, before the conversation with Warner terminated, Smith had concluded that she had to sign and return defendant's form before the cancellation would be effective, although, if she did sign and return it, the cancellation would be effective as of October 11, 1985.[2] The court, therefore, could have found that

---

[2] On direct examination, Smith testified about the substance of the phone call:

"I told her that I had insurance with St. Paul and—no, I didn't tell her that, because I didn't remember until I looked at my card. I called up. I said I wanted to cancel my insurance with Valley Pacific because I had a new policy. She asked me

Smith did not orally cancel her policy with defendant on October 11, 1985, but requested that it be cancelled, effective October 11, 1985, after she had signed and returned defendant's form, and that the policy, therefore, was in effect on the date of the fire.

Defendant argues that, in any event, the policy was "cancelled by substitution." Defendant contends that it need only prove that it agreed with Smith to cancel the policy and that Smith "procured another policy with the intent that it be substituted for the initial policy." Even if we assume that the defense of "cancellation by substitution" is available to defendant, the court could have found from the evidence that the agreement that the parties made before the fire was that the cancellation would be effective if Smith signed and returned defendant's form.[3] Accordingly, the court did not err when it

---

with whom. I had to find the card. But I knew the agent was Dan Nixon. And she asked me who the agent was. And then she said: 'Will that be effective today then?' I said, 'Yes.' She said: 'I will send you something in the mail. You are to sign it and return it.' I said, 'fine.' That was the extent of the conversation."

A little later, the attorney, on direct, asked: "As you hung up the phone, was there any question in your mind as to whether or not you were cancelled with Valley?" The answer was "No." On cross-examination, there was this colloquy:

"Q. Now, when you telephoned you said that you stated you wanted to cancel the policy with Valley Pacific. Then was it explained to you that you needed to sign the form in order to do that?

"A. She said they were sending me a form. She didn't specifically explain, but I am assuming it was a signing off form.

"Q. To sign off on that insurance policy?

"A. Uh hum.

"Q. To go through the formality of the cancellation?

"A. Right."

From that testimony, the court could have found that, although Smith believed that her phone call was sufficient to start the process of cancellation, she believed that she needed to sign and return the form before cancellation would be finally effective.

[3] As to Warner, she was asked on cross-examination:

"Q. And you told her really that she needed to sign the release form in order to cancel the policy, didn't you?

"A. Yes.

"Q. Now, did she agree that she would sign the release form to cancel the policy and send it back to you?

"A. I don't remember really what was said.

"Q. Well you certainly didn't get any argument with her on the telephone, did

awarded judgment to plaintiff.

Affirmed.

---

you?

"A. No.

"Q. She was saying that she would go ahead and do what was necessary to cancel the policy?

"A. Yes.

"Q. You expected her to sign and return the release form?

"A. Yes.

"Q. That was because of the conversation you had with her?

"A. Yes."