Argued and submitted February 16, vacated in part; otherwise affirmed
May 19, 1999

Robert H. LOVERIN,
*Respondent,*

*v.*

Thomas C. PAULUS
and Commonwealth Management Corporation,
an Oregon corporation,
*Appellants.*

(97C-10368; CA A101797)

982 P2d 20

Asa L. Lewelling argued the cause and filed the brief for appellants.

Andrew P. Ositis argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Wollheim and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Defendants Thomas Paulus and Commonwealth Management Corporation (Commonwealth) appeal from a money judgment and an attorney fee award against them and in favor of plaintiff. Plaintiff's complaint included two claims. The first claim sought specific performance of an alleged oral agreement to transfer stock in Commonwealth. Alternatively, the second claim sought a money judgment for contractual indemnity. The two claims were directed at the same outcome—to reimburse plaintiff for sums he paid pursuant to a written agreement in settlement of pending litigation. The case was tried to the court without a jury. In a letter opinion, the trial court held for plaintiff based on the indemnity claim.

Defendants claim that the trial court erred in three respects: in concluding that the settlement agreement afforded a basis for the judgment for indemnification; in concluding that the settlement agreement was not fully integrated and therefore, in considering parol evidence in its decision, including the alleged oral agreement; and in awarding plaintiff a judgment for attorney fees against them. We vacate the trial court's award of attorney fees but otherwise affirm.

In 1994, plaintiff, defendants, and several other parties entered into a written settlement agreement resolving two pending actions among defendants, the other parties, and their litigation adversary, Guardian Management Corporation (Guardian). That litigation, referred to in the settlement agreement as the "Alpine Laundry Case" and the "Briarwood Case," stemmed from the business reverses and eventual bankruptcy of plaintiff's late father-in-law, Jack Miller. Paulus and Miller were business associates and shareholders in Commonwealth. Before his death, Miller had asked plaintiff to help settle the litigation. Plaintiff was not a party to either of the lawsuits, nor was he a debtor to Guardian on any of the obligations that were the subject of the litigation. Although the signers of the settlement agreement included Guardian, Commonwealth, Paulus, several other corporations and individuals involved in the Alpine and Briarwood cases, and plaintiff, the preface to the agreement

recited that "[t]he *parties* are engaged in two cases * * * (the 'Alpine Laundry Case') and * * * (the 'Briarwood Case'). The *parties* have agreed to settle all of the disputes raised *in these two cases* * * *[.]*" (Emphasis added.)

The settlement agreement provided that plaintiff, Miller's estate, Commonwealth, and Paulus would pay Guardian $50,000 in full settlement of the pending claims. Plaintiff and Commonwealth each paid $20,000, and Guardian forgave the remaining $10,000 in consideration of Commonwealth's early payment of its share. The settlement agreement included the following release provision:

> "12.2    The parties intend this Settlement Agreement to be a complete resolution of all disputes among them relating to the issues raised in the Alpine Laundry Case and the Briarwood Case. Except for the obligations of the parties set forth in this Settlement Agreement, each part[y] hereby releases and forever discharges each and every other party from all claims, actions, causes of action or causes of suit known or unknown arising prior to the date hereof, which any of the parties might have or urge against each other or their heirs, assigns, representative or successors."

In addition, the settlement agreement contained the following paragraph addressing plaintiff's participation:

> "12.3    [Plaintiff] has been involved in discussions with all parties toward resolving the disputes among the parties. Each of the parties agree to indemnify and hold harmless [plaintiff] from any claim, loss, or damages arising out of his activities in connection with the settlement discussions and the accomplishment of this Settlement Agreement."

Of additional relevance to the dispute in this case, paragraph 14.1 of the agreement provided that "[t]his Settlement Agreement, and the other agreements expressly referred to herein, represent the entire agreement between the parties. There are no other agreements, written or oral, relating to the subject matter hereof."

Plaintiff testified that he and Paulus had made an oral contract incidentally to the settlement agreement, providing that Paulus would transfer Commonwealth stock in return for plaintiff's advance of the settlement funds.

Another witness testified that before the settlement agreement was executed Paulus orally agreed with plaintiff that he would either reimburse plaintiff or transfer Commonwealth stock to him in consideration of plaintiff's contribution to the settlement. After paying his $20,000 share of the settlement, plaintiff requested that Paulus either reimburse him for the payment or transfer $20,000 worth of stock in Commonwealth to him. Paulus never responded to plaintiff's demand for compensation and this action ensued. The trial court found for plaintiff, awarding him judgment against defendants for $20,000 plus a supplemental judgment for attorney fees. Defendants appeal from both judgments.

Before analyzing defendants' assignments of error, we must initially determine the basis of the trial court's judgment. The trial court stated that the written settlement agreement "was not fully integrated." The court concluded: "In reviewing [the written settlement agreement], it is this Court's opinion that this was an agreement between the parties and Guardian as to the payment of monies to the Guardian *and did not cover or discuss any issues of indemnification, or contribution*." (Emphasis added.) It then determined from parol evidence that there was an agreement that provided either for "indemnification or an interest in [C]ommonwealth." We therefore conclude that the trial court used the claimed *oral* agreement—not the written settlement agreement—as the basis for indemnification.

■■ In their first assignment of error, defendants argue that the trial court erroneously relied on the indemnification provision in the settlement agreement as the basis for recovery. As we have already observed, that argument misapprehends the basis of the trial court's decision, which was not the written agreement. Implicit in the trial court's conclusion that the settlement agreement did not cover plaintiff's claim for reimbursement is a determination that the indemnity provision in the settlement agreement was intended to cover issues *other than* the adjustment of rights among the paying parties for their respective settlement contributions. Because defendants' first assignment of error does not correctly identify any error, it is not well taken.[1]

---

[1] In his brief on appeal, plaintiff also appears to confuse the oral agreement with the indemnity provision of the settlement agreement. That confusion is

In their second assignment of error, defendants argue that the settlement agreement was fully integrated and therefore the trial court should not have considered the alleged oral agreement. Defendants further contend that the alleged agreement was not supported by the evidence.

■■ As to defendants' challenge to the sufficiency of the evidence, a claim for contractual indemnity is an action at law. *Gordon H. Ball v. Oregon Erect. Co.*, 273 Or 179, 181, 539 P2d 1059 (1975); *Waggoner v. Oregon Auto Ins. Co.*, 270 Or 93, 100, 526 P2d 578 (1974). Therefore, we review the trial court's findings of fact to determine whether there is any evidence to support them. *Fogh v. McRill*, 153 Or App 159, 168, 956 P2d 236, *rev den* 327 Or 431 (1998). With regard to the question of whether a writing is completely or partially integrated, we review the trial court's findings of fact for any evidence to support them and the court's legal conclusions based on those facts for errors of law. *State v. Triad Mechanical, Inc.*, 144 Or App 106, 114, 925 P2d 918, *rev den* 324 Or 488 (1996). *See also Wescold, Inc. v. Logan International, Ltd.*, 120 Or App 512, 520, 852 P2d 960, *rev den* 318 Or 459 (1993).

■■ The parol evidence rule normally bars consideration of extrinsic evidence when the terms of an agreement are fully expressed in writing. ORS 41.740.[2] However, "in

---

compounded by the pleadings. Although plaintiff's first claim for specific performance was plainly based on a separate oral agreement, the second claim, seeking indemnity, did not explicitly incorporate the written agreement but paraphrased paragraph 12.3 in alleging a right to indemnification. Nevertheless, plaintiff presented evidence of a separate oral agreement for indemnity. It is clear that the trial court considered extrinsic evidence in concluding that plaintiff was entitled to indemnity and did *not* rely on the written agreement. Any variance between the theory pleaded in the second claim and the basis for the trial court's judgment was not raised in the trial court nor was it raised by defendants on appeal. Therefore, it is waived. *Elsasser v. M.P.R. Construction Corp.*, 39 Or App 715, 722, 593 P2d 1218, *rev den* 287 Or 1 (1979).

[2] ORS 41.740 provides:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representative or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However, this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term 'agreement' includes deeds and wills as well as contracts between parties."

answering th[e] question [of whether the contract was integrated], the court may consider all relevant evidence, including parol evidence." *Abercrombie v. Hayden Corp.*, 320 Or 279, 288, 883 P2d 845 (1994). Furthermore, once the court has determined that a contract was not fully integrated, the parol evidence rule does not apply. *Hatley v. Stafford*, 284 Or 523, 527, 588 P2d 603 (1978). To determine whether the parties intended the settlement agreement to be only partially integrated, the court must decide whether the alleged extrinsic agreement

" '(1)   * * * is not inconsistent with the integrated contract, and

" '(a)   is made for separate consideration, or

" '(b)   is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract.' " *Id.* at 528 (quoting *Restatement (Contracts)* § 240 (1932)).

The trial court was required to determine initially whether the settlement agreement and the oral contract were inconsistent. Defendants rely on the settlement agreement's release and integration provisions in support of their argument that the trial court erred in assessing inconsistency. According to defendants, plaintiff released them from any claim whatsoever pursuant to paragraph 12.2 of the settlement agreement and, further, the integration provision of the settlement agreement, paragraph 14.1, precluded conflicting parol evidence. We conclude that there was evidence to support the trial court's decision to the contrary.

■   While the trial court did not expressly state that the agreements were not inconsistent, it did conclude that the subject matter of the written agreement did not include indemnification between plaintiff and defendants relating to plaintiff's contribution to the settlement. The most logical interpretation of that conclusion is that the agreements were

---

ORS 42.220 provides:

"In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."

not inconsistent because they had distinct purposes. To the extent that the trial court did not fully express its findings of fact, we presume that the court found facts consistent with its judgment. *See St. Paul Fire and Marine Ins. v. Valley Ins.*, 93 Or App 457, 459, 762 P2d 1048 (1988).

■ Although an integration clause "is an indication that the writing was intended to be a complete integration, * * * it is not conclusive." *Triad*, 144 Or App at 115. Here, the integration provision, paragraph 14.1, provided that the written agreement reflected the entire agreement between the parties. As we have previously observed, the preface to the settlement agreement referred to the parties as *litigants in the Alpine and Briarwood suits*. Plaintiff was not a party to that litigation. Therefore, although plaintiff was named in the settlement agreement and signed it, it is evident that the term "parties" was used ambiguously in that agreement, at least at times to refer only to the parties to the Alpine and Briarwood cases. Moreover, the clause only purported to integrate the agreement with respect to "the subject matter hereof"— which, also according to the preface to the agreement, was the Alpine and Briarwood litigation. Likewise, the release provision of the settlement agreement provided that the agreement was "a complete resolution of all disputes among [*the parties*] relating to *the issues raised in the Alpine Laundry Case and the Briarwood Case.*" (Emphasis added.) In contrast, the alleged oral agreement did not relate directly to the issues raised in that litigation. Rather, according to plaintiff's evidence, it addressed readjustment of rights among the parties who funded the settlement—a parallel but distinct subject matter. We conclude that the evidence was sufficient to support the trial court's implicit determination that the agreements were not inconsistent.

■ There was also evidence to support the trial court's conclusions relating to the second requirement for partial integration: either that there must be separate consideration for the oral agreement or that a separate agreement must be "natural" under the circumstances. The trial court found that there was a separate consideration and stated that "[t]he Court can find no reason for [plaintiff] to voluntarily pay the $20,000.00 There had to be some form of consideration for him doing this and the Court finds that indemnification or an

interest in [C]ommonwealth is the logical result." However, even had there been no separate consideration for plaintiff's payment, the alleged indemnity contract was the type of agreement that would "naturally" be made separately, since it involved only *some* of the parties to the settlement agreement and was focused only on the relationship between the parties funding the settlement. There is no compelling reason to conclude that the paying parties would necessarily have provided for readjustment of their own contributions in their contract with the payee.

Consequently, there was evidence to support the trial court's conclusion that the settlement agreement was only partially integrated, and that the parol evidence rule did not foreclose proof of the independent agreement for indemnity. Moreover, there was evidence to support the court's conclusion that the agreement was made. Therefore, we also reject defendant's second assignment of error.

We turn finally to defendants' third assignment of error, challenging the supplemental judgment for attorney fees. Defendants contend that since the written settlement agreement did not furnish a basis for plaintiff's recovery, it could not support an attorney fee award. We agree with defendants. Attorney fees are generally not recoverable unless specifically authorized by statute or contract. *Riedel v. First National Bank*, 287 Or 285, 290-91, 598 P2d 302 (1979). Plaintiff relied on the attorney fee provision in the written settlement agreement as the basis for his attorney fee claim. However, the trial court's decision was based on a separate *oral* agreement between the parties. There was no evidence that the oral agreement included an attorney fee feature. Therefore, the trial court erred in awarding plaintiff attorney fees under the written agreement.

Supplemental judgment for attorney fees vacated; otherwise affirmed.