Argued and submitted October 30, 2019; reversed and remanded for recalculation of plaintiff's compensation for Riddhi without discounts for minority interest or marketability, otherwise affirmed June 16, 2021

Dipak PATEL,
*Plaintiff-Appellant,*

*v.*

SIDDHI HOSPITALITY, LLC,
an Oregon limited liability company;
Riddhi Hospitality, LLC,
an Oregon limited liability company;
Sumukh Hospitality, LLC,
an Oregon limited liability company;
Vinayak Hospitality, Inc.,
an Oregon corporation;
Lina Patel, Personal Representative of
the Estate of Balvant Patel;
Mukesh Patel; and Bhupendra Patel,
*Defendants-Respondents.*

Linn County Circuit Court
13CV06376; A159893 (Control)

Dipak PATEL,
individually and in a derivative capacity
for Siddhi Hospitality, LLC,
an Oregon limited liability company,
dba Holiday Inn Express;
Riddhi Hospitality, LLC,
an Oregon limited liability company,
dba Comfort Suites; and
Sumukh Hospitality, LLC,
an Oregon limited liability company,
*Plaintiff-Appellant,*

*v.*

Mukesh PATEL;
Lina Patel, Personal Representative of
the Estate of Balvant Patel;
Bhupendra Patel;
Siddhi Hospitality, LLC,
an Oregon limited liability company,
dba Holiday Inn Express;

Riddhi Hospitality, LLC,
an Oregon limited liability company,
dba Comfort Suites; and
Sumukh Hospitality, LLC,
an Oregon limited liability company,
*Defendants-Respondents.*

Linn County Circuit Court
15CV18549; A164592

495 P3d 693

Plaintiff appeals from a judgment requiring defendants to purchase his interests in two limited liability companies, Riddhi Hospitality, LLC and Siddhi Hospitality, LLC, raising a number of assignments. He contends, among other arguments, that, in determining the value of his interest under the Riddhi operating agreement, the court erred in applying minority interest and marketability discounts to reflect that plaintiff's share was a minority interest in a closely held company. Plaintiff also contends that the court erred in determining, under the Siddhi operating agreement, that his interest in Siddhi should be based on the company's book value. He contends, further, that the trial court erred in failing to include cash reserves in determining Riddhi's fair market value. *Held*: There is no basis in the Riddhi operating agreement for applying minority and marketability discounts to plaintiff's compensation to reflect that his ownership was a minority interest in a closely held company, and the trial court therefore erred in applying those discounts. However, the trial court correctly determined that under the Siddhi operating agreement, plaintiff's interest was to be determined based on the company's book value, and correctly determined based on the evidence in the record that Riddhi cash reserves should not be included in the company's fair market value.

Reversed and remanded for recalculation of plaintiff's compensation for Riddhi without discounts for minority interest or marketability; otherwise affirmed.

Thomas McHill, Judge.

Terrence Kay argued the cause for appellant. Also on the briefs was Matthew Chandler and Terrence Kay, P.C.

Robert J. McGaughey argued the cause for respondents Siddhi Hospitality, LLC, Riddhi Hospitality, LLC, and Sumukh Hospitality, LLC. Also on the brief was Kevin P. Kress and McGaughey Erickson.

Susan Marmaduke, J. Aaron Landau, and Harrang Long Gary Rudnick P. C. filed the brief for respondents Lina Patel, Mukesh Patel, Bhupendra Patel, and Vinayak Hospitality, Inc.

Before DeHoog, Presiding Judge, and Mooney, Judge, and Kistler, Senior Judge.

DeHOOG, P. J.

Reversed and remanded for recalculation of plaintiff's compensation for Riddhi without discounts for minority interest or marketability; otherwise affirmed.

**DeHOOG, P. J.**

Plaintiff Dipak Patel was a member and 25 percent owner of defendant entities Siddhi Hospitality, LLC (Siddhi) and Riddhi Hospitality, LLC (Riddhi), both of which are limited liability companies organized under ORS chapter 63. Siddhi and Riddhi separately own and operate, pursuant to franchise agreements, a Holiday Inn Express (Siddhi) and a Comfort Inn Suites (Riddhi). Believing that he was not being treated fairly by his fellow LLC members—defendants Balvant Patel,[1] Mukesh Patel, and Bhupendra Patel—and that they were planning to expel him, plaintiff filed suit against the entity and individual defendants. In cases ultimately consolidated for trial, plaintiff filed complaints alleging various claims, some of a derivative nature, including minority oppression, breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duties, negligence, indemnity, "disgorgement of attorney fees," and wrongful termination. Plaintiff also sought to have Balvant Patel removed or expelled and to have the LLCs buy out his interests in Riddhi and Siddhi. Defendants filed counterclaims, seeking to expel plaintiff from Riddhi and Siddhi.

The parties tried those matters to the court. At the conclusion of trial, the court wrote a lengthy and thoughtful letter "verdict" rejecting all of plaintiff's claims. The court found that plaintiff had not been subject to oppression; that plaintiff had not been treated unfairly by the other LLC members; that, in managing the LLCs' business, the managing member had acted pursuant to the "Business Judgment Rule"; that the other LLC members had not breached their duties to plaintiff; and that, under the terms of the operating agreements, the other LLC members had the authority to expel plaintiff from both Riddhi and Siddhi.

In accordance with plaintiff's request that he be compensated for his interests in the defendant LLCs, the trial court determined those interests. The court determined that, under the Siddhi operating agreement, plaintiff's compensation should be based on the company's book value and awarded plaintiff $409,740 for the buyout of his interest in

---

[1] Balvant Patel is now deceased, and his personal representative has been substituted as a defendant.

that LLC. Under the Riddhi operating agreement, on the other hand, the court determined that plaintiff's compensation was to be as calculated as 25 percent of the fair market value of the LLC, discounted to reflect that plaintiff's share was a minority interest in a closely held company. The court ordered that plaintiff be paid $990,000 for his interest in Riddhi.

On appeal, plaintiff raises seven assignments of error. The trial court's findings, including its findings that the LLC members did not oppress plaintiff and that they had a basis under the operating agreements to expel him, are supported by evidence in the record. We therefore reject without further discussion plaintiff's third, fifth, sixth, and seventh assignments, which could only succeed if the trial court's findings did not have record support. *See Loverin v. Paulus*, 160 Or App 605, 610, 982 P2d 20 (1999) (We "review the trial court's findings of fact to determine whether there is any evidence to support them."); *Saga Enterprises, Inc. v. Coldwell, Banker and Co.*, 287 Or 169, 180, 598 P2d 285 (1979) ("Under the 'any evidence' test, we cannot set aside a factual finding unless we can affirmatively say there is no evidence to support it."); *see also* ORCP 62 F (in an action tried to the court, trial court's factual findings are entitled to same deference as jury verdict). We write only to address aspects of plaintiff's first, second, and fourth assignments of error that turn on an issue of law, specifically, an interpretation of the Riddhi and Siddhi operating agreements.

In his first assignment, plaintiff contends that the trial court erred in concluding, on the basis of an expert opinion, that, for purposes of the buyout of plaintiff's interest in Riddhi, the value of plaintiff's interest should be discounted to reflect that plaintiff's interest was a minority share in a closely held business. Defendant responds that the determination of the fair market value of Riddhi was a factual determination supported by evidence in the record. *See City of Bend v. Juniper Utility Co.*, 242 Or App 9, 21, 252 P2d 341 (2011) (In "any context in which a factfinder is charged with determining fair market value," it is the factfinder's role to "make a factual call as to the fair market value of the property in question."). Defendant further asserts that, in determining the amount to be paid to plaintiff, the court

did not merely value plaintiff's interest under the operating agreement, but acted within its equitable power to determine an amount that was fair:

> "In determining the amount to be paid to plaintiff for his membership interest, the trial court was not limited to simply construing the Riddhi Operating Agreement to determine the parties' initial expectations. Rather, it was entitled to consider all of the facts and circumstances bearing on the task of finding 'a fair way' to determine what defendants should have to pay to plaintiff."

That determination, defendants contend, should be reviewed for abuse of discretion and affirmed.

Defendants are correct that the determination of the fair market value of Riddhi was a question of fact for the trial court. And, as defendants point out, in an introductory comment to the court's evaluation of plaintiff's request to be indemnified for attorney fees, the court described its role, sitting in equity, as requiring it to reach a fair result for the parties. But we reject defendants' contention that, in valuing plaintiff's share of Riddhi and Siddhi, the court engaged in a wide-ranging, equity-based evaluation of what would be "fair" to compensate plaintiff. It is clear from the trial court's letter verdict that it viewed the valuation of plaintiff's interest in Riddhi to be controlled by that LLC's operating agreement, which, the court stated, was "the best evidence of the expectations of any departing member"; thus, the trial court valued plaintiff's interest in Riddhi pursuant to its determination of what Riddhi's operating agreement required. We therefore turn to the operating agreement to determine whether the trial court correctly interpreted it.

In the absence of an ambiguity, the construction of the Riddhi operating agreement was a question of law for the court, *Hekker v. Sabre Construction Co.*, 265 Or 552, 555, 510 P2d 347 (1973), and we review the trial court's interpretation for legal error. In construing the operating agreement, we apply the template for contract construction set forth in *Yogman v. Parrott*, 325 Or 358, 361-64, 937 P2d 1019 (1997). We examine first the text of the disputed provisions in the context of the document as a whole. If the document's meaning is clear, our analysis typically ends. *Yogman*, 325

Or at 361.[2] We conclude, based on our reading of the text of the operating agreement for Riddhi, that the agreement is unambiguous and does not provide for discounts for minority interest and marketability.

The operating agreement for Riddhi describes the determination of the value of a departing member's interest upon a buyout:

> "Upon an election by the LLC to purchase the interest of a member * * * the value of the affected member's interest shall be determined by multiplying the member's percentage ownership interest by the fair market value of all LLC assets."

Thus, the value of the interest of a Riddhi member who is to be bought out is determined by multiplying the member's percentage ownership interest in Riddhi by the fair market value of all of the assets of Riddhi.

Paul Mettler, the valuation expert on whom the trial court relied, provided the opinion that "the fair market value of all" Riddhi's assets was its business enterprise value—the value of the business equity in total. Mettler opined that, calculated in that manner, the fair market value of Riddhi was $5.5 million. Mettler then determined that, without discounts, plaintiff's 25 percent share of that fair market value was $1,375,000.

Mettler then testified that he had been charged to provide an opinion of the fair market value of plaintiff's 25 percent share. To do that, Mettler believed that it was correct to apply minority and marketability discounts of 10 and 20 percent, respectively, to reflect the more limited market for the sale of a minority share in a closely held company. That had the effect of reducing the value of plaintiff's interest by $385,000.

Based on its view that the minority and marketability discounts were applicable under the Riddhi operating

---

[2] No party offered evidence of the circumstances surrounding the formation of the Rhiddhi operating agreement to establish an ambiguity on that point that is not evident from the text. *See* ORS 41.740 (parol evidence rule); *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 314, 129 P3d 773, *rev den*, 341 Or 366 (2006) (recognizing that parol evidence is admissible for such purposes).

agreement, the trial court adopted Mettler's valuation of Riddhi. As noted, in his first assignment of error, plaintiff challenges the application of both discounts.

We agree with plaintiff that the operating agreement does not support the application of the discounts. If, as Mettler understood it, plaintiff was to be compensated for *the fair market value of his minority interest* (which, Mettler testified, is an estimate of what a hypothetical willing buyer will pay a hypothetical willing seller for that interest in an arms-length transaction), then discounting plaintiff's compensation to reflect that his interest was a minority share in a closely held company might have been appropriate. But the operating agreement does not provide that plaintiff be compensated for the fair market value of his 25 percent interest. The operating agreement unambiguously required that plaintiff be compensated for his share in the fair market value *of all the assets* of the LLC, *not* for the fair market value *of his share* of the company. The distinction is subtle but significant. Plaintiff's compensation under the agreement was to be 25 percent of the fair market value of Riddhi's assets, not the fair market value of his own 25 percent interest. Thus, if, as Mettler determined, the fair market value of all the assets of Riddhi was $5.5 million, then plaintiff was to be compensated for 25 percent of that amount. There is no basis in the operating agreement for applying discounts to plaintiff's compensation to reflect that his ownership was a minority interest in a closely held company. The trial court therefore erred in adopting that aspect of Mettler's valuation of plaintiff's compensation.[3]

Plaintiff's fourth assignment of error raises a related issue, but we reach a different conclusion as to that assignment. In determining the fair market value of Riddhi, Mettler excluded from the LLC's assets cash reserves of $300,000. Plaintiff contends that the court erred in accepting that aspect of Mettler's opinion, which plaintiff asserts

---

[3] We reject without discussion defendants' contention that plaintiff waived his right to challenge the application of the discounts by accepting the payments. *See Schlecht v. Bliss*, 271 Or 304, 310 n 1, 532 P2d 1 (1975) (noting that "acceptance of an award of damages does not preclude an appeal on the ground that those damages were inadequate").

had the erroneous effect of reducing plaintiff's compensation by $75,000.

The record shows that the $300,000 in cash or capital reserves was set aside by the LLC for such things as routine future maintenance, periodic renovations required by the LLC's franchise agreement, and other predictable capital expenditures. Plaintiff's own expert testified that such reserves are "put away for capital expenditures" and that they are accounted for as "an annual expense." Nothing in the record suggests that those future liabilities were not, in fact, anticipated. That is, there is no evidentiary basis for plaintiff's assertion that the $300,000 in cash reserves was an asset of Riddhi that should have been added to the fair market value of all of the LLC's assets. The trial court did not err in accepting Mettler's opinion on cash reserves.

Finally, in his second assignment of error, plaintiff contends that the trial court erred in valuing his interest in Siddhi based on the company's book value rather than its fair market value. The Siddhi operating agreement includes a provision describing the circumstances under which a member may be expelled:

> "A member may be expelled from the company only for cause and only upon the unanimous vote of all other members. Cause includes a willful and substantial breach of this agreement and conduct prejudicial to the company and its members."

The Siddhi operating agreement further provides for the calculation of a departing member's compensation:

> "A departing member, or the estate of a deceased or bankrupt member, shall be compensated in cash for the membership interest of such member in an amount equal to the member's outstanding capital contribution plus the member's proportionate share of any accrued net company profits, or less the member's proportionate share of any accrued net Company losses. The assets of the company shall be valued at book value for purposes of this section, and no value shall be attributed to goodwill."

The trial court determined that plaintiff should be compensated for his interest in Siddhi based on his share of the book value of the company's assets. Plaintiff contends

that the record does not support the trial court's conclusion, because the record does not support its finding that plaintiff was expelled from the LLC for cause. Further, plaintiff contends, because the record requires the conclusion that he was subject to majority oppression, he is entitled to a forced purchase of his interest by defendants based on a 25 percent share of Siddhi's fair market value.

Plaintiff does not contend that the court's reliance on book value was incorrect, if, as the trial court found, the evidence supports the court's determinations that he could be expelled from Siddhi and that there was no oppression. In light of our conclusion that the evidence supports the trial court's findings, we reject the second assignment of error.

We reject plaintiff's remaining assignments of error without discussion.

Reversed and remanded for recalculation of plaintiff's compensation for Riddhi without discounts for minority interest or marketability; otherwise affirmed.